```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


DENNIS CHINN,                     )
                                  )
           Plaintiff              )
                                  )
      v.                          )   Case No. 2:04 cv 393
                                  )
JULIE CANTRELL, Individually      )
and as Judge of Lake Superior     )
Court #3, LAKE SUPERIOR COURT     )
#3, and SHAW SPURLOCK,            )
Individually and as a police      )
officer for the Lake County       )
Sheriff's Department, LAKE        )
COUNTY SHERIFF'S DEPARTMENT and   )
LAKE COUNTY, INDIANA,             )
                                  )
           Defendants             )
```

OPINION and ORDER

This matter is before the court on the Motion for Partial Reconsideration filed by the plaintiff, Dennis Chinn, on April 18, 2006. For the reasons set forth below, the motion is **DENIED**.

Background

The plaintiff, Dennis Chinn, brought this action under 42 U.S.C. §1983, alleging that his former employer, Judge Julie Cantrell, unlawfully suspended him without pay. The suspension followed an incident in which Chinn recommended an attorney for a criminal defendant, Nicholas Bennett, in Cantrell's court and then attempted to collect the attorney's fee from Bennett's family. On March 16, 2006, this court granted summary judgment in favor of defendants Cantrell and Lake Superior Court #3 on all claims. In that Opinion, the court found that Chinn raised an

equal protection claim for the first time in response to the defendants' motion for summary judgment.  Consequently, the court held that this claim was waived.  In his motion for reconsideration, Chinn essentially seeks a substantive ruling on his equal protection claim.

The court herein incorporates the facts as set forth in the March 16, 2006 Opinion. The following additional facts form the basis of Chinn's equal protection claim:

Chinn was the first of Cantrell's employees to be suspended without pay. (Julie Cantrell Dep. p. 36)  However, other employees engaged in unprofessional conduct prior to Chinn's suspension. (Cantrell Dep. p. 40) For example, a secretary wrote a letter to a newspaper that promoted an attorney she was dating. (Cantrell Dep. p. 39)  Also, Cantrell's office administrator, who was acting as an interpreter in another court, advised a person in the other court which attorney to hire because that particular attorney spoke the same language. (Cantrell Dep. pp. 40-41) Third, Randy H. Wyllie, who was a public defender in Cantrell's court, was the attorney Chinn recommended to Nicholas Bennett. (Cantrell Dep. pp. 57-59).  Finally, Cantrell's employees accused her brother-in-law, James Ballentine, of stealing money from someone's desk. (Cantrell Dep. p. 55)

After the first and second incidents, Cantrell issued written reprimands.  (Cantrell Dep. pp. 39-40) Cantrell called the police to report the theft, but there was no evidence linking Ballentine to the theft other than the employees' personal

beliefs that he took the money, and Ballentine resigned shortly thereafter. (Cantrell Dep. pp. 55-56) With both Ballentine and Wyllie, Cantrell conferred with the Judicial Nominating Commission and reported the employees' alleged actions to the police. (Cantrell Dep. pp. 55-58)

## Discussion

Although they are frequently filed, the Court of Appeals has described a motion for reconsideration as "a motion that, strictly speaking, does not exist under the Federal Rules of Civil Procedure." *Hope v. United States*, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994). *See also Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001). This type of motion "is a request that the [Court] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) (internal quotation omitted).

In *Frietsch v. Refco, Inc.*, 56 F.3d 825 (7th Cir. 1995), the Court of Appeals did not question the availability of a motion to reconsider but stated:

> It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.

56 F.3d at 828

*See also Oto v. Metropolitan Life Insurance Company,* 224 F.3d

601, 606 (7th Cir. 2000)("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."); *Divane v. Krull Electric Company*, 194 F.3d 845, 850 (7th Cir. 1999); *LB Credit Corporation v. Resolution Trust Corporation*, 49 F.3d 1263, 1267 (7th Cir. 1995). Ultimately, a motion for reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Global View Ltd. Venture Capital v. Great Central Basin Exploration*, 288 F.Supp.2d 482, 483 (S.D.N.Y. 2003)(internal quotation omitted).

The Equal Protection Clause of the Fourteenth Amendment ensures the security of "every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1075, 145 L.Ed.2d 1060 (2000). This protection is afforded to classes of people, as well as individuals representing a "class of one." See *Olech*, 528 U.S. at 564, 120 S.Ct. at 1075. However, to bring a successful claim under the "class of one" theory, a plaintiff must prove that he was "(1) intentionally treated differently from others similarly situated and there is no rational basis for that treatment, or (2) that the government is treating similarly situated individuals differently because of a 'totally illegitimate animus' for the plaintiff." *Aida Food and Liquor, Inc. v. City of Chicago*, 439 F.3d 397, 402-03 (7th Cir. 2006). The

typical "class of one" case is one in which a public official or entity "comes down hard on a hapless private citizen." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005). As the Seventh Circuit recently noted, "[t]he principal effect of "class of one" suits by public employees is . . . to undermine discipline in public agencies." *Lauth*, 424 F.3d at 633. For this reason, when "the unequal treatment arises out of the employment relation, the case for federal judicial intervention in the name of equal protection is especially thin." *Lauth*, 424 F.3d at 633.

To successfully establish a "class of one" action under the "rational basis" theory, the plaintiff first must point to a comparator that is "*prima facie* identical in all relevant respects or directly comparable to [plaintiff] in all material respects." *Racine Charter One, Inc. v. Racine Unified School District*, 424 F.3d 677, 680 (7th Cir. 2005) (internal citations and quotations omitted). See also *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004)("It is clear that similarly situated individuals must be very similar indeed.") (collecting cases). This standard is akin to the "similarly situated" test for Title VII employment discrimination, and it requires the plaintiff to establish that both he and a comparator engaged in the same conduct under the same set of circumstances. See, e.g., *Racine Charter One*, 424 F.3d at 680-81; *Ciechon v. City of Chicago*, 686 F.2d 511, 522 (7th Cir. 2002); *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *Radue v. Kimberly-Clark Corporation*, 219 F.3d 612, 617 (7th Cir. 2000).

Even if the plaintiff can point to a comparator, the court will uphold the government's action if "it bears a rational relation to some legitimate end." *Racine Charter One*, 424 F.3d at 685 (internal citation and quotation omitted). At this step, the court considers "only whether any state of facts reasonably may be conceived to justify the classification." *Racine Charter One*, 424 F.3d at 685 (internal citation and quotation omitted).

As an alternative to the rational basis test, Chinn may be able to establish discrimination under the "illegitimate animus" theory. The Seventh Circuit recently has questioned the role of subjective animus in "class of one" equal protection cases. *See Racine Charter One*, 424 F.3d at 683-84 (noting that some Seventh Circuit cases apply illegitimate animus as a separate test, that some apply it in conjunction with rational basis, and that the Supreme Court expressly has declined to determine the relevance of subjective animus). To the extent the illegitimate animus theory exists, it is available only when the government's conduct exhibits "no rational reason or motive . . . [and] would be inexplicable unless animus had motivated it." *Lauth*, 424 F.3d at 634. Under this approach, the plaintiff must show that the governmental action was a "spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995). As with the rational basis theory, a plaintiff claiming illegitimate animus still must establish that he was treated differently than a similarly situated comparator. *See Lauth*, 424 F.3d at 634.

Chinn's "class of one" claim fails under both the rational basis and illegitimate animus theories because he has not established that he is "identical in all relevant aspects" to another employee. *Racine Charter One*, 424 F.3d at 680. The only common ground between Chinn and the secretary, office administrator, public defender Wyllie, and brother-in-law Ballentine is that all were employed by Judge Cantrell. The other employees held different positions and engaged in far different activities than did Chinn, ranging from alleged petty theft to writing a general public letter extolling an attorney. Chinn went a step further than the attorney recommendations made by Cantrell's office administrator and secretary when he attempted to collect attorneys' fees from the Bennett family. He also was the only employee accused of criminal behavior, beyond the wholly unsubstantiated suspicions that Ballentine had stolen cash from a coworker. With both Ballentine and Chinn, Cantrell contacted the police and Judicial Nominating Committee. Because Ballentine resigned immediately after the theft, it is mere speculation that he would not have been suspended pending the investigation into the theft. In sum, Chinn fails to set forth a group of people or person "similarly situated" to himself to illustrate unequal treatment.

In any event, it certainly is a reasonable decision to suspend a bailiff who recommended a particular public defender and then attempted to collect the defender's attorney fee, pending investigation into the matter. In light of the undisputed facts in this case, Chinn's attempt to characterize his suspen-

sion as motivated by illegitimate animus amounts to little more than an attempt to promote judicial involvement into an otherwise fully rational disciplinary action taken by a supervisor against a public employee. *Lauth*, 424 F.3d at 633.  The criminal aspect of Chinn's admitted actions alone provides a rational basis for Cantrell's decision to suspend, rather than merely reprimand, him.

_____

For the above reasons, the Motion for Partial Reconsideration filed by the plaintiff, Dennis Chinn, on April 18, 2006 is **DENIED**.

ENTERED this 28th day of June, 2006


                              s/ ANDREW P. RODOVICH
                                United States Magistrate Judge